**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| JOHN MICHAEL RICHMOND,<br><br>    Petitioner,<br><br>vs.<br><br>JERRY BURT, Warden,<br><br>    Respondent. | No. C05-0062-MWB<br><br>**REPORT AND RECOMMENDATION ON PETITION FOR WRIT OF HABEAS CORPUS** |

_____

This matter is before the court on an amended petition for writ of habeas corpus (Doc. No. 23) filed by the petitioner John Michael Richmond. The parties have briefed the issues (*see* Doc. Nos. 31, 32, & 33), and the matter has been referred to the undersigned pursuant to 28 U.S.C. § 626(b)(1)(B), for review and the filing of a report and recommended disposition. (*See* Doc. No. 11)

Richmond was convicted of second-degree sexual abuse in violation of Iowa law, and on May 23, 1997, he was sentenced to a term of twenty-five years in prison. The Iowa Supreme Court summarized the background of the case as follows:

> Defendant John Michael Richmond and Robyn Krell had an intimate relationship. Shortly after Krell ended it, Richmond appeared at her residence, threatened her with a knife and forced her to have sex. Afterwards Richmond stated, "I might as well call the police and turn myself in." He then began to talk to Krell about getting counseling. She first suggested a crisis center which Richmond called. He told someone at the center that he had raped and tried to kill his wife. He did not give his name. The person at the center told him to call a second such facility. Richmond did so and identified himself as "John." He told them that he had forced his girlfriend to have sex with him at knife point. He made an appointment with the second facility but did not keep it.

> Richmond then called Fr. Dick Osing, whom he had hired several months previously for counseling on a matter not involved in this prosecution. Osing is a full-time Episcopal priest and a part-time unlicensed marriage and family counselor. Following the assault, Richmond again called Fr. Osing and made an appointment for later the same day. Fr. Osing and Richmond met at Osing's church. No one else was present.
>
> As a result of the attack, Richmond was charged with second-degree sexual abuse in violation of Iowa Code sections 709.1(1) and 709.3(1). At trial Fr. Osing was called as a prosecution witness and recited what Richmond had related to him regarding the assault.

*State v. Richmond*, 590 N.W.2d 33, 34 (Iowa 1999) ("*Richmond II*"). The Iowa Supreme Court's factual determinations are presumed to be correct, absent clear and convincing rebuttal by Richmond. *See* 28 U.S.C. § 2254(e)(1).

Prior to trial, Richmond filed a motion to suppress Fr. Osing's testimony on the basis of privilege, relying on Iowa Code section 622.10.[1] The trial court denied the motion on the basis that Richmond's admissions to Fr. Osing "were not made in confidence and do not fall within a priest-penitent privilege." Ruling on Motion to Suppress, *State v. Richmond*, No. FECR 15239 (Linn County Dist. Ct. Feb. 7, 1997) (Doc. No. 32-2, p. 2). The trial court further found any social worker-client privilege that might have applied to the communication was excepted under the provisions of Iowa Code

---

[1] At the time of Richmond's trial, section 622.10 provided, in pertinent part:
> A practicing attorney, counselor, physician, surgeon, physician assistant, mental health professional, or the stenographer or confidential clerk of any such person, who obtains information by reason of the person's employment, or a member of the clergy shall not be allowed, in giving testimony, to disclose any confidential communications properly entrusted to the person in the person's professional capacity, and necessary and proper to enable the person to discharge the functions of the person's office according to the usual course of practice or discipline.

Iowa Code § 622.10 (1991).

section 154C.5(1).[2] In addition, the trial court found Richmond had waived any privilege he may have had by making the admissions to other persons. *Id.* (citing *State v. Alspach*, 524 N.W.2d 665 (Iowa 1994); *State v. Tornquist*, 120 N.W.2d 483, 254 Iowa 1135 (Iowa 1963)).

Richmond appealed, asserting the single claim that the trial court had erred in admitting into evidence his communications to Fr. Osing. The Iowa Court of Appeals found the communications between Richmond and Fr. Osing were privileged and confidential because Richmond spoke with Fr. Osing in confidence, and Fr. Osing was acting in his professional capacity as a priest during the conversation. *State v. Richmond*, No. 8-277/97-0654, at 4-5 (Iowa Ct. App. Sep. 30, 1998) (Doc. No. 32-2, pp. 6-7) ("*Richmond I*"). However, the Iowa Court of Appeals found the error was harmless because Fr. Osing's testimony did not prejudice Richmond. *Richmond I*, Doc. No. 32-2, pp. 7-8.

One Justice concurred in the holding that the trial court had erred in admitting Fr. Osing's testimony, but dissented from the holding that the trial court's error was harmless, finding the trial court's ruling had "such a chilling effect upon the relationship between a priest and a confidante as to destroy any confidential relationship between them." *Id.*, p. 9. The dissenting Justice found that allowing Fr. Osing's testimony was tantamount to allowing the prosecution to circumvent Richmond's right against self-incrimination under the Fifth Amendment to the United States Constitution. *Id.*

On further review, the Iowa Supreme Court did not reaching the harmless error analysis because the court found Richmond's admissions to Fr. Osing were not privileged. The court found "a glaring hole in Richmond's claim that he directed his remarks to Fr. Osing in the latter's capacity as a priest," noting "Richmond himself concedes that [his

---

[2] Iowa law provides an exception to the social worker-client privilege when "the information reveals the contemplation or commission of a crime." Iowa Code § 154C.5(1).

3

contact with Fr. Osing] was not for any spiritual reason but for advice on his relationship with Krell. Fr. Osing testified he was under the same impression." *Richmond II*, 590 N.W.2d at 35. Finding, therefore, that Richmond had not spoken with Fr. Osing in the latter's professional capacity, the court held Richmond's claim of priest-penitent privilege failed. *Id.* The court further found Fr. Osing had not offered his counseling services to Richmond as a certified professional, and because he counseled Richmond only as an informal, unlicensed counselor, the counselor-client privilege also was not applicable. *Id.*

Richmond filed an application for postconviction relief, asserting several grounds for relief. Among other things, Richmond argued "his constitutional rights were violated as the result of the Iowa Supreme Court's ruling on the priest-penitent privilege. . . ." *Richmond v. Iowa*, No. LACV 037092 (Linn Cty. Dist. Ct. Jul. 22, 2003) (Doc. No. 32-2, p. 15). The PCR court denied relief on the basis that the issue had already been ruled upon by the Iowa Supreme Court. *Id.*

On appeal, the Iowa Court of Appeals characterized Richmond's PCR claim as one that his "appellate counsel failed to challenge the constitutionality of the priest-penitent privilege as applied by the trial court." *Richmond v. State*, 690 N.W.2d 698 (Table), 2004 WL 2169439 at *1 (Iowa Ct. App. Sept. 29, 2004) (Doc. No. 32-2, p. 18) ("*Richmond PCR*"). The PCR appellate court held as follows, in pertinent part:

> Richmond claims that the supreme court's decision rejecting his priest-penitent privilege arguments violated several constitutional protections guaranteed by both the Iowa and United States Constitutions. More specifically, Richmond argues the court's ruling violated the establishment of religion clauses in both constitutions. U.S. Const. amend. I; Iowa Const. art. I, § 2. He also claims he was denied his right to due process of law under the Due Process Clause of the Fourteenth Amendment of the United States Constitution and Article I, section 9 of the Iowa Constitution. His arguments are summarized in this way:

> Consequently, the principle [sic] effect of [section] 622.10 is now to advance an expressly religious communication if the penitent seeks the protection of [section] 622.10(1). The Supreme Court's decision fosters an excessive and continuous government entanglement with religion by requiring each Iowa court to define whether a specific communication is "spiritual."
>
> . . . .
>
> The Iowa Supreme Court's opinion in the Petitioner's direct appeal clearly altered the legal rules of evidence in effect at the time of the commission of the offense with which Mr. Richmond was charged and did so in such a way as to violate the Due Process protection of Amendment 14 [of the United States Constitution], and Article 1, Section 9 [of the Iowa Constitution]. These constitutional provisions guard against a judicial construction which deprives a defendant of fair notice that a rule of evidence will be altered. Only the objective criteria of Section 622.10 should be applied to the Petitioner's claim of clergy privilege.
>
> Richmond's constitutional claims are premised entirely on the notion that the *Richmond* opinion added a new spirituality dimension to invocation of the priest-penitent privilege. We disagree. Under our reading of the *Richmond* opinion, the court simply determined that Richmond did not consult Fr. Osing in his professional capacity as a priest and the privilege was therefore inapplicable. Because none of the constitutional protections cited were implicated, no attorney representing Richmond in any capacity at any stage of any related proceeding was duty bound to raise the constitutional issues he now relies upon. Moreover, and for the same reasons, the trial court did not err in rejecting Richmond's claims that the supreme court's decision in *Richmond* was unconstitutional. We affirm on this issue.

*Richmond PCR*, Doc. No. 32-2, p. 19. The Iowa Supreme Court denied further review.

In Richmond's Amended Petition in the present action, he asserts two grounds for relief, as follows:

> A. Petitioner was denied the right to a fair trial when the trial court allowed testimony of [his] "clergy" that involved information of a privileged nature that was never waived.[]
>
> B. That the court, by ordering the "clergy" to testify unreasonably intruded on Petitioner's religious practices and rights to confide in his clergy.

(Doc. No. 23, pp. 3-4)

The respondent argues Richmond's claims are procedurally defaulted because he failed to present these issues fairly as federal constitutional issues before the Iowa courts. (Doc. No. 32-1, p. 9) The respondent further argues the issue of whether Richmond's communications to Fr. Osing were privileged was decided on state law grounds, applying Iowa's evidentiary law and rules. He argues Richmond never raised federal constitutional arguments in his direct appeal, and never offered the Iowa courts a fair opportunity to rule on the constitutional claims he is attempting to assert in this action. (*See id.*, pp. 9-13) The respondent also argues the PCR court dismissed Richmond's claims involving the admission of Fr. Osing's testimony on procedural grounds, finding the issue unreviewable because it had already been decided on direct appeal. (*Id.*, p. 13) The respondent asserts that if any constitutional issue was preserved for this court's review at all, the issue is one Richmond has not raised here; *i.e.*, whether his attorneys were ineffective in failing to preserve for review the substantive constitutional claims Richmond attempts to raise before this court. (*Id.*, pp. 14-15) The respondent therefore argues Richmond's claims in this action are procedurally defaulted, and are not properly before this court for review on the merits. (*Id.*)

In the alternative, the respondent argues that if Richmond's constitutional claims were preserved for review, they are without merit because even if he could show a

constitutional violation occurred, Richmond cannot show he was prejudiced, and the error therefore was harmless. (*Id.*, pp. 23-24; *see id.*, pp. 15-24)

Richmond argues he presented the issues fairly as federal constitutional issues on direct appeal, and the Iowa Supreme Court's interpretation of Iowa Code section 622.10 violated his Fifth Amendment right against self-incrimination. He apparently claims that despite his failure to cite the Fifth Amendment or relevant United States Supreme Court case law in his direct appeal, the issue he raised on appeal concerning the counselor-client or priest-penitent privilege nevertheless raised a federal constitutional issue concerning his Fifth Amendment right against self-incrimination. (*See* Doc. Nos. 31 & 33)

The Eighth Circuit Court of Appeals has explained repeatedly:

> Before a federal court may reach the merits of a claim in a *habeas* petition by a state prisoner, it "must first determine whether the petitioner has fairly presented his federal constitutional claims to the state court." *See Duncan v. Henry*, 513 U.S. 364, 365-66, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (*per curiam*); *McCall v. Benson*, 114 F.3d 754, 757 (9th Cir. 1997). "In order to fairly present a federal claim to the state courts, the petitioner must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." *McCall*, 114 F.3d at 757 (internal quotations omitted).

*Frey v. Schuetzle*, 151 F.3d 893, 897 (8th Cir. 1998). *See also Sweet v. Delo*, 125 F.3d 1144, 1153 (8th Cir. 1997) ("Raising a state-law claim in state court that is merely similar to the constitutional claim later pressed in a habeas action is insufficient to preserve the latter for federal review.") (citing *Abdullah v. Groose*, 75 F.3d 408,l 411 (8th Cir. 1996) (*en banc*); *Gray v. Netherland*, 518U.S. 152, 162, 116 S. Ct. 2074, 2081, 135 L. Ed. 2d 456 (1996) ("holding that general appeal to broad concept such as due process is insufficient presentation of issue to state court")).

7

Richmond first raised a constitutional question in his PCR application, when he argued the Iowa Supreme Court's ruling on the priest-penitent privilege violated his constitutional rights.[3] The PCR court did not address the constitutional issue. Indeed, the PCR court did not address any issue surrounding Richmond's communications to Fr. Osing, finding the issue had already been decided adversely against Richmond by the Iowa Supreme Court.

On appeal from the PCR ruling, the Iowa Court of Appeals did Richmond the favor of recharacterizing his PCR claim as one for ineffective assistance of appellate counsel in failing "to challenge the constitutionality of the priest-penitent privilege as applied by the trial court." *Richmond PCR*, Doc. No. 32-2, p. 18. Addressing this issue, the PCR appellate court held no constitutional protections were implicated because the Iowa Supreme Court "simply determined that Richmond did not consult Fr. Osing in his professional capacity as a priest," removing their conversation from the purview of any privilege. *Richmond PCR*, Doc. No. 32-2, p. 19. Because the PCR appellate court found no constitutional violation occurred, the court further found Richmond's appellate counsel could not have been ineffective in failing to raise the issue. *Id.* For the same reason, the PCR appellate court held the PCR trial court did not err in rejecting Richmond's challenge to the Iowa Supreme Court's decision. *Id.*

It therefore appears Richmond may have preserved for review the issue of whether his appellate counsel was ineffective in failing to challenge the constitutionality of the trial

---

[3]Notably, at the PCR stage, any such claim would have been procedurally defaulted except in the context of an ineffective assistance of counsel claim. *See Berryhill v. State*, 603 N.W.2d 243, 245 (Iowa 1999) (claims not raised properly in direct appeal may not be raised in PCR action absent showing of cause and actual prejudice); *Borushaski v. State*, 662 N.W.2d 371 (Table), 2003 WL 183284 (Iowa Ct. App. Jan. 29, 2003) (ineffective assistance of appellate counsel may constitute cause for failure to raise claim that trial counsel was ineffective); *Knox v. Iowa*, 131 F.3d 1278, 1281 n.2 (8th Cir. 1997) (citing *Jones v. State*, 479 N.W.2d 265, 271 (Iowa 1991); *Washington v. Scurr*, 304 N.W.2d 231, 235 (Iowa 1981)) ("Ineffective assistance of trial counsel must be raised in Iowa on direct appeal before postconviction relief is available, unless the defendant can show sufficient reason for the default.").

court's application of the priest-penitent privilege. Significantly, however, Richmond has not raised an ineffective assistance of counsel claim in this action. The court finds the two claims Richmond has raised in this action were not preserved for review, and are procedurally defaulted. Moreover, the court finds that even if Richmond had raised an ineffective assistance of appellate counsel claim in the present action, he could not show prejudice and, therefore, could not prevail. The record indicates Richmond would have been convicted even if Fr. Osing had not testified.

For these reasons, **IT IS RESPECTFULLY RECOMMENDED**, unless any party files objections[4] to this Report and Recommendation in accordance with 28 U.S.C. § 636 (b)(1)(C) and Fed. R. Civ. P. 72(b), within ten (10) days of the service of a copy of this Report and Recommendation, that Richmond's petition for writ of habeas corpus be denied.

**IT IS SO ORDERED.**

**DATED** this 15th day of June, 2006.

PAUL A. ZOSS
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[4] Objections must specify the parts of the report and recommendation to which objections are made. Objections must specify the parts of the record, including exhibits and transcript lines, which form the basis for such objections. *See* Fed. R. Civ. P. 72. Failure to file timely objections may result in waiver of the right to appeal questions of fact. *See Thomas v. Arn*, 474 U.S. 140, 155, 106 S. Ct. 466, 475, 88 L. Ed. 2d 435 (1985); *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).