# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

JOHN MICHAEL RICHMOND,

         Petitioner,

vs.

JERRY BURT, Warden,

         Respondent.

No. C05-0062-MWB

**MEMORANDUM OPINION AND ORDER REGARDING REPORT AND RECOMMENDATION ON PETITION FOR WRIT OF HABEAS CORPUS**

———————————

## TABLE OF CONTENTS

I. *INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    *A. Standard Of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        *1.    Standard of review of report and recommendation* . . . . . . . . 15
        *2.    General standards for § 2254 relief* . . . . . . . . . . . . . . . 16
    *B. Objections To Report And Recommendation* . . . . . . . . . . . . . . . . . . 18
    *C. Analysis of Richmond's Claim(s)* . . . . . . . . . . . . . . . . . . . . . . . . 21

III. *CERTIFICATE OF APPEALABILITY* . . . . . . . . . . . . . . . . . . . . . . . . . 28

IV. *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

## I. INTRODUCTION AND BACKGROUND

Before the court is a petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254. Petitioner, John Michael Richmond, is an inmate at the Anamosa State Penitentiary, Anamosa, Iowa. He was convicted, following a jury-trial, of second-degree sexual abuse, in violation of Iowa law. He was sentenced to a term of imprisonment of twenty-five years.

Somewhat more specifically, Richmond's conviction arose out of a series of events that transpired on October 24, 1996. The Iowa Supreme Court succinctly summarized the details underlying Richmond's conviction in this way:

> Defendant John Michael Richmond and Robyn Krell had an intimate relationship. Shortly after Krell ended it, Richmond appeared at her residence, threatened her with a knife and forced her to have sex. Afterwards Richmond stated, "I might as well call the police and turn myself in." He then began to talk to Krell about getting counseling. She first suggested a crisis center which Richmond called. He told someone at the center that he had raped and tried to kill his wife. He did not give his name. The person at the center told him to call a second such facility. Richmond did so and identified himself as "John." He told them that he had forced his girlfriend to have sex with him at knife point. He made an appointment with the second facility but did not keep it.
>
> Richmond then called Fr. Dick Osing, whom he had hired several months previously for counseling on a matter not involved in this prosecution. Osing is a full-time Episcopal priest and a part-time unlicensed marriage and family counselor. Following the assault, Richmond again called Fr. Osing and made an appointment

> for later the same day.  Fr. Osing and Richmond met at Osing's church. No one else was present.
>
> As a result of the attack, Richmond was charged with second-degree sexual abuse in violation of Iowa Code sections 709.1(1) and 709.3(1).  At trial Fr. Osing was called as a prosecution witness and recited what Richmond had related to him regarding the assault.

State v. Richmond, 590 N.W.2d 33, 34 (Iowa 1999) ("*Richmond II*").[1]

Richmond was charged by trial information with sexual abuse in the second degree. Richmond pleaded not guilty, and the case proceeded to trial.  Prior to trial, Richmond filed a motion to suppress Fr. Osing's testimony on the basis that the statements he made to Fr. Osing were confidential and fell within Iowa's priest-penitent privilege, embodied in Iowa Code section 622.10.[2]  The trial court denied Richmond's motion on three primary

---

[1] The Iowa Supreme Court's factual determinations are presumed to be correct, absent clear and convincing rebuttal by Richmond. *See* 28 U.S.C. § 2254(e)(1); *see also Rousan v. Roper*, 436 F.3d 951, 955 (8th Cir. ), *cert. denied*, 127 S. Ct. 68 (2006).

[2] At the time of Richmond's trial, section 622.10 provided, in pertinent part:

> A practicing attorney, counselor, physician, surgeon, physician assistant, mental health professional, or the stenographer or confidential clerk of any such person, who obtains information by reason of the person's employment, or a member of the clergy shall not be allowed, in giving testimony, to disclose any confidential communications properly entrusted to the person in the person's professional capacity, and necessary and proper to enable the person to discharge the functions of the person's office according to the usual course of practice or discipline.

Iowa Code § 622.10 (1991).

grounds. First, the trial court found that any admissions to Fr. Osing were not made in confidence and, consequently, did not fall within the priest-penitent privilege. *See* Ruling on Motion to Suppress, *State v. Richmond*, No. FECR 15239 (Linn County Dist. Ct. Feb. 7, 1997) (Doc. No. 32-2, p. 2). Moreover, the trial court determined that even if a privilege existed, Richmond had waived any such privilege he may have had by making the admissions to other persons. *Id.* (citing *State v. Alspach*, 524 N.W.2d 665 (Iowa 1994); *State v. Tornquist*, 120 N.W.2d 483 (Iowa 1963)). Finally, the trial court noted that any social worker-client privilege that potentially could have been applicable to the communications at issue was excepted under the provisions of Iowa Code section 154C.5(1), which contemplates an exception to the social worker-client privilege when "the information reveals the contemplation or commission of a crime." *Id.*; *see Iowa Code* § 154C.5(1).

A two-day trial by jury commenced on April 7, 1997. On April 9, 1997, the jury returned a verdict of guilty. On April 22, 1997, Richmond filed a motion for new trial. In this motion, Richmond asserted that admission of his confidential communications to Fr. Osing was in error. The district court denied the motion without explanation. On May 23, 1997, the district court sentenced Richmond to an indeterminate twenty-five year term of imprisonment.

Thereafter, Richmond filed a timely appeal. In his appeal brief, he asserted the single claim of the trial court's error in admitting Fr. Osing's testimony on the grounds that Richmond's admissions to Fr. Osing constituted privileged communications under either the priest/penitent privilege, or in the alternative, the counselor/client privilege, in violation of Iowa statutory law, and more specifically, in violation of Iowa Code section 622.10 protecting professional communications. The Iowa Court of Appeals disagreed with the trial court and found that the communications between Richmond and Fr. Osing

were privileged. To this end, the Iowa Court of Appeals determined that Richmond spoke with Fr. Osing in confidence and that Fr. Osing was acting in his professional capacity as a priest during the conversation. *State v. Richmond*, No. 8-277/97-0654, at 4-5 (Iowa Ct. App. Sep. 30, 1998) (Doc. No. 32-2, pp. 6-7) ("*Richmond I*"). The court next determined whether the error of admitting Fr. Osing's testimony constituted "reversible error." *Id.* at 5 (Doc. No. 32-2, p. 7). In embarking on this analysis, the court noted that if the error was of a constitutional magnitude, then it would be necessary to determine if the error was "'harmless beyond a reasonable doubt and the state must show it did not contribute to the conviction.'" *Id.* (quoting *State v. Ware*, 205 N.W.2d 700, 704 (Iowa 1973)). Contrarily, however, if the error was not of a constitutional magnitude then the prejudicial impact, or lack thereof, would govern the disposition of the error. *Id.* (citing *State v. Forsyth*, 547 N.W.2d 833, 839 (Iowa Ct. App. 1996)). Finding that the relationship of a priest and penitent is protected by statute as opposed to the United States Constitution, the Iowa Court of Appeals proceeded to determine whether the error caused prejudice. *Id.* Ultimately, because Fr. Osing's testimony was cumulative, the *Richmond I* court determined no prejudice resulted from the trial court's ruling and affirmed Richmond's conviction. *Id.* at 6 (Doc. No. 32-2, p. 8).

Senior Judge Schlegel[3] concurred in part and dissented in part from the *Richmond I* majority opinion. *Id.* at 1 (Schlegel, S.J., concurring in part and dissenting in part) (Doc. No. 32-2, p. 9). Senior Judge Schlegel concurred with the majority's conclusion that the trial court had erred in admitting Fr. Osing's testimony. *Id.* However, Senior Judge Schlegel departed from the majority's holding that the trial court's error was without prejudice to Richmond. *Id.* Rather, Senior Judge Schlegel found that "to allow the

---

[3]Senior judge assigned by order pursuant to Iowa Code section 602.9206 (1997).

testimony of Reverend Osing is tantamount to permitting the prosecutor the ability [sic] to circumvent defendant's right against self-incrimination, as the same is prohibited by the Fifth Amendment to the Constitution of the United States." *Id.* Thus, although Senior Judge Schlegel recognized that the priest-penitent privilege is statutory in nature, because, at least in his view, it operates to protect a constitutional privilege, he ruled it should be subject to the same tests as to its effect upon the trial as if it were specifically protected by the constitution. *Id.* at 2 (Doc. No. 32-2, p. 10). In essence, Senior Judge Schlegel opined that such testimony could only be ruled nonprejudicial if it could satisfy the more stringent standard of harmless beyond a reasonable doubt and that its allowance into evidence had no effect upon the outcome of the trial. *Id.* Because, in his view, the more stringent standard could not be satisfied, Senior Judge Schlegel dissented from this facet of the majority opinion. *Id.* at 3 (Doc. No. 32-2, p. 11).

Following the Iowa Court of Appeals's affirmance, Richmond applied for further review from the Iowa Supreme Court. Richmond's Brief in Support of his Application for Further Review is virtually identical to his initial appeal brief. *Compare generally* Appellant's Brief, *Iowa v. Richmond*, (No. 97-954), *with* Appellant's Application for Further Review of the Decision of the Iowa Court of Appeals, *Iowa v. Richmond*, (No. 97-0954). The only significant difference that can be noted between the two briefs is that in Richmond's Application for Further Review, he acknowledged that the Iowa Court of Appeals held the admission of the confession was not of constitutional significance, and based on that conclusion, determined whether Richmond was prejudiced by the admission as opposed to whether the error was harmless beyond a reasonable doubt. Appellant's Application for Further Review, *Iowa v. Richmond*, at ii, pt. 2. Instead of arguing for the more stringent standard, Richmond simply posited in his application that under either standard of review, he was prejudiced by the confession. *Id.* at ii, pt. 3. Later, in the

argument portion of his Application, Richmond failed to argue or cite case law tending to support application of either standard to his claims. *Id.* at 7-15. Rather, as he did in his first appellate brief, Richmond simply argued as follows:

> An error is not harmless if it "had substantial influence" on the jury. *Kotteakos v. U.S.*, 328 U.S. 750, 765, 66 S. Ct. 1239, 1248, 90 L.E. 1557 (1946). Only if the error had no or a "very slight effect" such that the court can say "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error," can it be concluded the error was harmless. *Id.* at 764-65, 66 S. Ct. at 1247-48. Consistent with this analysis is *State v. Craney*, 347 N.W.2d 668, 676 (Iowa 1984) (harmless error "beyond a reasonable doubt").
>
> The testimony of Reverend Osing was highly prejudicial and the remainder of the State's case against Osing [sic] cannot be accurately described as overwhelming. Ms. Krell waited over two days to report the incident and no physical evidence was produced. Richmond took the stand and contradicted her testimony, asserting the alleged sex act was consensual. It was only through Reverend Osing's testimony that Krell's testimony seemed more believable. Although two witnesses from other agencies testified that they received a call from a man saying he had raped his wife, neither witness knew Richmond or could identify his voice or face. Under such circumstances, the court cannot find the error harmless. *See State v. Leuty*, 247 Iowa 251, 258, 73 N.W.2d 64, 66-67 (1955); *State v. Johnson*, 367 N.W.2d 319, 322 (Iowa App. 1985).

*Id.* at 14-15. Notably, the final two cases cited by Richmond, *State v. Luety* and *State v. Johnson*, did not deal with constitutional issues requiring application of the more stringent standard.

On further review, however, the Iowa Supreme Court determined it did not need to reach the merits of the harmless error analysis because the court found Richmond's communications to Fr. Osing fell outside the canopy of protection provided by Iowa Code 622.10. *Richmond II*, 590 N.W.2d at 35. The Iowa Supreme Court noted that Richmond himself had conceded that his contact with Fr. Osing was not for any spiritual reason but rather to obtain Osing's advice with respect to his relationship with Krell. *Id.* Fr. Osing testified he agreed with this representation and was under a similar impression. *Id.* Thus, the court found what it described as a "glaring hole" in Richmond's contention that he directed his remarks to Fr. Osing in the latter's capacity as a priest. *Id.*

Turning to Richmond's contention that the communications were protected under counselor-client privilege, the Iowa Supreme Court noted that it took a limited view on who qualifies as a counselor under Iowa Code section 622.10 and that the court was not "anxious to expand on the category in the absence of legislative mandate." *Id.* Accordingly, because Fr. Osing counseled Richmond only as an unlicenced, informal counselor, the court concluded that Richmond could not prevail on his claim that his conversation was protected under a counselor-client privilege. *Id.* Consequently, the Iowa Supreme Court affirmed Richmond's conviction. *Id.*

Richmond then filed an Application for Postconviction Relief on March 3, 2000, asserting several grounds for relief. On October 1, 2001, Richmond filed an amended application appending a number of additional claims. More specifically, among other arguments, Richmond asserted that (1) the decision of the Iowa Supreme Court did not resolve the federal constitutional issues of self-incrimination and did not assess prejudice

on appellate review by applying the more stringent analysis to a claim involving a constitutional right; (2) alternatively, trial counsel and appellate counsel were ineffective in not raising the Fifth Amendment issue and ensuring that Richmond's Fifth Amendment rights were protected; and (3) the Iowa Supreme Court's interpretation of Iowa Code section 622.10 violated the Establishment Clause and Richmond's First Amendment, Freedom of Religion rights. The postconviction relief court did not address Richmond's constitutional issues raised with respect to the priest-penitent privilege. In fact, the postconviction relief court did not address any issue in this aspect because the court determined Richmond's contentions had already been decided against him in prior Iowa Supreme Court decisions.[4] Ruling on Application for Postconviction Relief, *Richmond v. State*, LACV 037092 (Linn County Dist. Ct. July 22, 2003).

Richmond appealed the dismissal of his Application for Postconviction Relief to the Iowa Court of Appeals. The court, presumably because it recognized many, if not most of Richmond's claims were procedurally barred, did Richmond the favor of recharacterizing his constitutional arguments with respect to the priest-penitent privilege as ineffective assistance of counsel claims, thus potentially permitting collateral review of the claims. The court assumed, *without deciding*, that Richmond had preserved the following ineffective assistance of counsel issues for review:

> Richmond claims that the supreme court's decision rejecting his priest-penitent privilege arguments violated several constitutional protections guaranteed by both the Iowa and United States Constitution. More specifically, Richmond argues the court's ruling violated the

---

[4]Under Iowa Code section 822.8, no claims can be relitigated in postconviction relief proceedings if they have already been decided on direct appeal. Iowa Code § 822.8.

> establishment of religion clauses in both
> constitutions. U.S. Const. amend. I; Iowa
> Const. art. I, § 3. He also claims he was denied
> his right to due process of law under the Due
> Process Clause of the Fourteenth Amendment of
> the United States Constitution and Article I,
> section 9 of the Iowa Constitution.

*Richmond v. State*, 690 N.W.2d 698, No. 03-1457, 2004 WL 2169439, at *2 (Iowa Ct.

App. Sept. 29, 2004) (unpublished table decision). The court set forth Richmond's

summary of his arguments and concluded as follows:

> Consequently, the principle effect
> of [section] 622.10 is now to
> advance an expressly religious
> communication if the penitent
> seeks the protection of [section]
> 622.10(1). The Supreme Court's
> decision fosters an excessive and
> c o n t i n u o u s   g o v e r n m e n t
> entanglement with religion by
> requiring each Iowa court to define
> whether a specific communication
> is "spiritual."
>
> . . . .
>
> The Iowa Supreme Court's opinion
> in the Petitioner's direct appeal
> clearly altered the legal rules of
> evidence in effect at the time of
> the commission of the offense with
> which Mr. Richmond was charged
> and did so in such a way as to
> violate the Due Process protection
> of Amendment 14 [of the United
> States Constitution], and Article 1,

> Section 9 [of the Iowa
> Constitution]. These constitutional
> provisions guard against a judicial
> construction which deprives a
> defendant of fair notice that a rule
> of evidence will be altered. Only
> the objective criteria of Section
> 622.10 should be applied to the
> Petitioner's claim of clergy
> privilege.
>
> Richmond's constitutional claims are premised
> entirely on the notion that the *Richmond* opinion
> added a new spirituality dimension to invocation
> of the priest-penitent privilege. We disagree.
> Under our reading of the *Richmond* opinion, the
> court simply determined that Richmond did not
> consult Fr. Osing in his professional capacity as
> a priest and the privilege was therefore
> inapplicable. Because none of the constitutional
> protections cited were implicated, no attorney
> representing Richmond in any capacity at any
> stage of any related proceeding was duty bound
> to raise the constitutional issues he now relies
> upon. Moreover, and for the same reasons, the
> trial court did not err in rejecting Richmond's
> claims that the supreme court's decision in
> *Richmond* was unconstitutional. We affirm on
> this issue.

*Id*. at *2. The Iowa Supreme Court denied further review.

Thereafter, on March 29, 2005, Richmond filed a Petition for Writ of Habeas Corpus before this court (Doc. No. 3). On December 9, 2005, Richmond filed an Amended Petition for Writ of Habeas Corpus. (Doc. No. 23). In Richmond's Amended Petition in the present action, he asserts two grounds for relief, as follows:

> A. Petitioner was denied the right to a fair trial
> when the trial court allowed testimony of [his]
> "clergy" that involved information of a
> privileged nature that was never waived.
>
> B. That the court, by ordering the "clergy" to
> testify unreasonably intruded on Petitioner's
> religious practices and rights to confide in his
> clergy.

Amended Petition for Writ of Habeas Corpus at 3-4, *Richmond v. Ault* (C05-0062-MWB) (Doc. No. 23, pp. 3-4). Although his brief in support is less than lucid, it appears to the court that, essentially, Richmond avers he was denied a fair trial because the Iowa Court's interpretation of Iowa Code section 622.10 injected into the statute a "novel" requirement that the priest-penitent privilege only applied to a "strictly" spiritual communication. Brief in Support of Petition for Habeas Corpus at 9-10, *Richmond v. Burt* (C05-0062-MWB) (Doc. No. 31, pp. 9-10). Richmond contends the Iowa Supreme Court's determination was a violation of the prohibition against ex post facto laws, and as such, violated his Fourteenth Amendment right to Due Process of law. *Id.* at 9. Richmond further asserts the spirituality requirement inhibits religious practices and fosters an excessive government entanglement with religion in violation of the First Amendment. *Id.* at 13.

Additionally, although not expressly identified as an issue, Richmond's brief could conceivably be read as raising a Fifth Amendment claim based on Senior Judge Schlegel's dissent in *Richmond I*. *Id.* at 10. Richmond states in his brief that Senior Judge Schlegel's opinion "explained how a finding of non-prejudice allowed the prosecutor to circumvent the defender's [sic] right against self-incrimination," and that Senior Judge Schlegel would have also applied the more stringent standard of review delineated in *Chapman v. California*, 386 U.S. 18 (1967), as a result. *Id.* However, this is the only case cited with respect to this issue and the only paragraph devoted to this argument and Richmond does

not expound upon the issue further.  *See id.*

The respondent resists Richmond's petition, arguing that Richmond's claims are procedurally defaulted because he failed to present these issues fairly as federal constitutional issues before the Iowa courts.  Respondent's Brief on the Merits at 9, *Richmond v. Burt* (C05-0062-MWB) (Doc. No. 32-1, p. 9).  The respondent further highlights the fact that the issue of whether Richmond's communications to Fr. Osing were privileged was decided on state law grounds, applying Iowa's evidentiary law and rules. *Id.* at 11-13.  The respondent argues Richmond never raised federal constitutional arguments in his direct appeal and, therefore, never offered the Iowa courts a fair opportunity to rule on the constitutional claims he is attempting to assert in this action.  *See id.* at 9-13.  The respondent further argues the postconviction relief court dismissed Richmond's claims involving the admission of Fr. Osing's testimony on procedural grounds, finding the issue unreviewable because it had already been decided on direct appeal.  *Id.* at 13-14).  The respondent asserts that if any constitutional issue was preserved for this court's review at all, the issue is one Richmond has not raised here; *i.e.*, whether his attorneys were ineffective in failing to preserve for review the substantive constitutional claims Richmond attempts to raise before this court.  *Id.* at 14-15.  The respondent therefore argues Richmond's claims in this action are procedurally defaulted, and are not properly before this court for review on the merits.  *Id.*

Alternatively, however, the respondent argues that if Richmond's constitutional claims were preserved for review, they are without merit because even if he could show a constitutional violation occurred, Richmond cannot show he was prejudiced, and the error therefore was harmless.  *Id.* at 23-24; *see id.* at 15-24.

In his reply brief, Richmond confusingly argues that his claims were fairly presented to the Iowa courts on direct appeal because "[t]he cases were framed around a

Fifth Amendment right against self-incrimination claim," despite the fact he failed to even cite the Fifth Amendment or specifically mention its applicability to his claims. In addition, Richmond contends his claims are not barred on independent state-law grounds because the Iowa Supreme Court's interpretation of Iowa Code section 622.10 violated Richmond's Fifth Amendment right against self-incrimination. Petitioner's Reply to Respondent's Brief at 1-2, *Richmond v. Burt* (No. C05-0062-MWB) (Doc. No. 33, pp. 1-2). None of the other arguments asserted by the respondent with respect to Richmond's other claims are referred to or addressed in Richmond's reply brief.

Pursuant to 28 U.S.C. § 626(b)(1)(B), Richmond's Amended Petition was referred to Magistrate Judge Paul A. Zoss for review and the filing of a report and recommended disposition. On June 15, 2006, Judge Zoss issued a Report and Recommendation on Richmond's Amended Petition for Writ of Habeas Corpus (Doc. No. 35). In his Report and Recommendation, Judge Zoss recommended the that Richmond's Amended Petition for Writ of Habeas Corpus be denied on the ground that the claims raised by Richmond were not preserved for review and were, therefore, procedurally defaulted. The parties were allotted ten days in which to file any objections to Judge Zoss's Report and Recommendation. On June 26, 2006, Richmond filed his objections, specifically challenging Judge Zoss's finding that his Fifth Amendment claim was procedurally defaulted (Doc. No. 36). For reasons that are not entirely clear to this court, Richmond chose only to refer specifically to the Fifth Amendment claim and left out reference to any of the other claims asserted in his habeas petition.

## II. ANALYSIS

### A. Standard Of Review

#### 1. Standard of review of report and recommendation

Pursuant to statute, this court's standard of review for a magistrate judge's Report and Recommendation is as follows:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge].

28 U.S.C. § 636(b)(1). Similarly, Rule 72(b) of the Federal Rules of Civil Procedure provides for review of a magistrate judge's Report and Recommendation on dispositive motions and prisoner petitions, where objections are made, as follows:

> The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

*Fed. R. Civ. P.* 72(b). The Eighth Circuit Court of Appeals has repeatedly held that it is reversible error for the district court to fail to conduct a de novo review of a magistrate judge's report where such review is required. *See, e.g., Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir. 1996) (citing 28 U.S.C. § 636(b)(1)); *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (citing *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994)); *Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995) (also citing *Belk*). Because objections have been filed in this case to Judge Zoss's legal conclusions, the court must conduct a de novo review.

## 2.    *General standards for § 2254 relief*

Section 2254(d)(a) of Title 28, as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996 governs Richmond's petition.

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court. Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams v. Taylor*, 529 U.S. 362, 404-05 (2000) (quoting 28 U.S.C. § 2254(d)(1)).[5] In this instance, Richmond seeks habeas relief under the second category. An "unreasonable application" of Federal law by a state court can occur in two ways: (1) where "the state court identifies the correct governing legal rule from the [Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case"; or (2) where "the state court either unreasonably extends a legal principle from [Supreme] Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407. It is not enough that the state court applied clearly established federal law erroneously or incorrectly—the application must additionally be unreasonable. *Id.* at 411; *see Bell v. Cone*, 535 U.S. 685, 694 (2002) ("an unreasonable application is different from an incorrect one."). Stated

---

[5]Section 2254(d)(2) also allows a writ of habeas corpus to issue if the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(2); *see Sexton v. Kemna*, 278 F.3d 808, 811 (8th Cir. 2002). Richmond does not seek habeas relief on this ground.

differently, a federal court may not grant the petition unless the state court decision, viewed objectively and on the merits, cannot be justified under existing Supreme Court precedent. *James v. Bowersox*, 187 F.3d 866, 869 (8th Cir. 1999).

However, in order to preserve an issue or claim for federal review, a petitioner must satisfy certain procedural requirements. As the Eighth Circuit Court of Appeals has explained previously:

> Before a federal court may reach the merits of a claim in a habeas petition by a state prisoner, it "must first determine whether the petitioner has fairly presented his federal constitutional claims to the state court." *See Duncan v. Henry*, 513 U.S. 364, 365-66, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (per curium); *McCall v. Benson*, 114 F.3d 754, 757 (9th Cir. 1997). "In order to fairly present a federal claim to the state courts, the petitioner must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case rasing a pertinent federal constitutional issue in a claim before the state courts." *McCall*, 114 F.3d at 757 (internal quotations omitted).

*Frey v. Schuetzle*, 151 F.3d 893, 897 (8th Cir. 1998); *see Sweet v. Delo*, 125 F.3d 1144, 1153 (8th Cir. 1997) ("Raising a state-law claim in state court that is merely similar to the constitutional claim later pressed in a habeas action is insufficient to preserve the latter for federal review.") (citing *Gray v. Netherland*, 518 U.S. 152, 162 (1996) (holding that general appeal to broad concept such as due process is insufficient presentation of the issue to state court); *Abdullah v. Groose*, 75 F.3d 408, 411-12 (8th Cir. 1996) (en banc) (stating that in order to present a habeas claim, a prisoner must fairly present both the facts and substance of his federal habeas corpus claim*))*.

## B. Objections To Report And Recommendation

As noted above, Richmond contends that he fairly presented the issues raised in his petition for habeas relief on direct appeal. Richmond states that the case law cited in his direct appeal raised a pertinent federal constitutional issue because the cases cited were framed around the Fifth Amendment right against self-incrimination. However, later in his objections, he contradictorily states:

> There should be no doubt that Richmond has claimed the same issues on direct appeal and on his Habeas Petition. Richmond's direct appeal, as well as his Habeas Petition dealt with the admission of communications between the clergyman/counselor and the Petitioner. This argument was not labeled "Fifth Amendment Constitutional Violations," however, the arguments are the same. In Petitioner's direct appeal, there was no need to raise Fifth Amendment violations and forcing him to do this creates a pleading requirement, which has no purpose but only acts as a hurdle for inmates in federal litigation.

Objections to Report and Recommendation on Petition for Writ of Habeas Corpus at 3, *Richmond v. Burt* (C05-0062-MWB). With respect to this claim, Judge Zoss found that:

> Richmond first raised a constitutional question in his PCR application, when he argued the Iowa Supreme Court's ruling on the priest-penitent privilege violated his constitutional rights. The PCR court did not address the constitutional issue. Indeed, the PCR court did not address any issue surrounding Richmond's communications to Fr. Osing, finding the issue had already been decided adversely against Richmond by the Iowa Supreme Court.
> On appeal from the PCR ruling, the Iowa

Court of Appeals did Richmond the favor of recharacterizing his PCR claim as one for ineffective assistance of appellate counsel in failing "to challenge the constitutionality of the priest-penitent privilege as applied by the trial court." *Richmond PCR*, Doc. No. 32-2, p. 18. Addressing this issue, the PCR appellate court held no constitutional protections were implicated because the Iowa Supreme Court "simply determined that Richmond did not consult Fr. Osing in his professional capacity as a priest," removing their conversation from the purview of any privilege. *Richmond PCR*, Doc. No. 32-2, p. 19. Because the PCR appellate court found no constitutional violation occurred, the court further found Richmond's appellate counsel could not have been ineffective in failing to raise the issue. *Id.* For the same reason, the PCR appellate court held the PCR trial court did not err in rejecting Richmond's challenge to the Iowa Supreme Court's decision. *Id.*

It therefore appears Richmond may have preserved for review the issue of whether his appellate counsel was ineffective in failing to challenge the constitutionality of the trial court's application of the priest-penitent privilege. Significantly, however, Richmond has not raised an ineffective assistance of counsel claim in this action. The court finds the two claims Richmond has raised in this action were not preserved for review, and are procedurally defaulted. Moreover, the court finds that even if Richmond has raised an ineffective assistance of appellate counsel claim in the present action, he could not show prejudice, and therefore, could not prevail. The record indicates Richmond would have been convicted even if Fr.

Osing had not testified.

Report and Recommendation on Petition for Writ of Habeas Corpus at 8-9, *Richmond v.
Burt* (C05-0062-MWB) (Doc. No. 35, pp. 8-9). In a footnote, Judge Zoss further noted:

> Notably, at the PCR stage, any such claim
> would have been procedurally defaulted except
> in the context of an ineffective assistance of
> counsel claim. *See Berryhill v. State*, 603
> N.W.2d 243, 245 (Iowa 1999) (claims not raised
> properly in direct appeal may not be raised
> absent showing of cause and actual prejudice);
> *Borushaski v. State*, 662 N.W.2d 371 (Table),
> 2003 WL 183284 (Iowa Ct. App. Jan. 29, 2003)
> (ineffective assistance of appellate counsel may
> constitute cause for failure to raise claim that
> trial counsel was ineffective); *Knox v. Iowa*, 131
> F.3d 1278, 1281 n.2 (8th Cir. 1997) (citing
> *Jones v. State*, 479 N.W.2d 265, 271 (Iowa
> 1991); *Washington v. Scurr*, 304 N.W.2d 231,
> 235 (Iowa 1981)) (Ineffective assistance of trial
> counsel must be raised in Iowa on direct appeal
> before postconviction relief is available, unless
> the defendant can show sufficient reason for the
> default.).

*Id.* at 8 n.3. Petitioner Richmond specifically objects to Judge Zoss's conclusion that his
claim under the Fifth Amendment was procedurally defaulted. However, he makes no
objection to Judge Zoss's Report and Recommendation with respect to his remaining
claims. It thus appears as though Richmond does not take issue with the legal standards
used by Judge Zoss in analyzing his petition, but instead, his objections center around the
ultimate legal conclusions reached by Judge Zoss employing those standards with respect
to his Fifth Amendment claim. The court will analyze Richmond's objections from this
perspective.

### C. *Analysis of Richmond's Claim(s)*

As mentioned previously, to avoid a finding of procedural default, a habeas petitioner must have presented his claims in such a way as to fairly alert the state court to the specific constitutional grounds asserted in the habeas petition. *Pierson v. O'Leary*, 959 F.2d 1385, 1392 (7th Cir. 1992). This fundamental requirement—that a petitioner first present his claims to the state court is rooted in the belief that it would be unjust for a federal court to upset a state court conviction without providing the state courts an opportunity to correct the constitutional violation. "Out of respect for finality, comity, and the orderly administration of justice, a federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default." *Dretke v. Haley*, 541 U.S. 386, 388 (2004).

Here, a review of the record reveals that, often times, Richmond's arguments leading up to (and even including the current petition) were by no means a model of clarity. In his direct appeal, his argument with respect to the admission of his communications with Fr. Osing was based solely on statutory, state law grounds. The only obscure reference this court can find with respect to any constitutional issue is one sentence, contained in the harmless error portion of Richmond's direct appeal. There, Richmond states, "Consistent with this [harmless error] analysis is *State v. Craney*, 347 N.W.2d 668, 676 (Iowa 1984)." *State v. Craney* is a case involving the Fifth Amendment right against self-incrimination. *Id.* at 671. However, in *Craney*, this right is addressed in the distinguishable context of the doctor-patient privilege and incriminatory statements made during an examination of the defendant as a result of the defendant's intent to rely on the defenses of insanity and diminished responsibility. *Id.* Richmond, however, does not draw comparisons to this case or even indicate *Craney's* relevance to his claims, with the exception of the fact that Richmond notes, parenthetically, that *Craney* utilized the

"harmless error beyond a reasonable doubt" standard. Even more important, however, is the fact that Richmond, at no point whatsoever, delineates *why* this standard should be applied to his case and indeed, from reading the brief, it is unclear whether Richmond is even arguing for this more stringent standard or whether he is simply pointing out that *Craney* is consistent with Iowa's harmless error analysis in other contexts. In fact, the first time the Fifth Amendment right to self-incrimination is even explicitly mentioned in *any* of Richmond's proceedings occurs not in a document he authored, but in Senior Judge Schlegel's dissent where he indicates that the harmless error beyond a reasonable doubt standard should be applied because Fr. Osing's testimony was tantamount to allowing the prosecution to circumvent Richmond's right against self-incrimination under the Fifth Amendment to the United States Constitution.

Although Richmond could have attempted to flesh this argument out on further review, Richmond again utterly failed to do so. In his Application for Further Review, Richmond points out that the Iowa Court of Appeals, finding the issue did not implicate constitutional concerns, determined whether the admission of the confession prejudiced the defendant, and not, whether the error was harmless beyond a reasonable doubt. Apparently, not arguing for either standard, Richmond simply submitted that under either standard of review, he was prejudiced by the confession. No further case law is cited in his brief because his brief to the Iowa Supreme Court is virtually identical in form to his brief submitted on appeal. The Fifth Amendment is neither mentioned in his brief, nor does Richmond even attempt to frame his claims as being constitutional in nature, apparently leaving that determination solely to the Iowa Supreme Court. Importantly, the Iowa Supreme Court was not required to make that determination because the court ultimately found that the admissions of Fr. Osing's testimony did *not* result in a violation of Iowa's statutory priest-penitent privilege.

It is not until his application for postconviction relief, that Richmond finally outlines his constitutional arguments and indicates, what this court discerns could be viewed as two related, but distinct, issues pertaining to the Fifth Amendment: First, whether the admission of Fr. Osing's testimony in and of itself violated the Fifth Amendment and second, whether the admission of the testimony was error under Iowa's statutory priest-penitent-privilege and, if so, whether the harmless error beyond a reasonable doubt standard governs the disposition of Richmond's claims. These issues are separate and distinct and cannot be considered together. This is, in part, what has shrouded Richmond's claims in confusion.

With respect to the first issue, it is clear to this court that the first time this issue was raised was to the PCR court. Under Iowa law, allegations which were capable of being raised on direct appeal but which are presented for the first time in a PCR petition are waived absent a showing of cause and actual prejudice. *Berryhill*, 603 N.W.2d at 245. Upon a review of Richmond's petition and traverse in this case, the court finds he has not made any showing this particular issue was unascertainable or unavailable at the time of trial or on direct appeal, thus waiving this claim under state law. Notably, the PCR court did not directly address this issue, presumably because Richmond had not properly or clearly asserted such a claim. Regardless of the reason the PCR court failed to directly address this issue, Richmond has undoubtedly forfeited it. *See Teague v. Lane*, 489 U.S. 288, 298 (1989) (finding that state court's failure to address claim in context urged by petitioner constituted procedural default) and *Engle v. Isaac*, 456 U.S. 107, 113-14 (1982) (applying procedural default rule to claim that had never been properly raised in state court).

Once a claim is procedurally defaulted, a federal court will not address the merits of that claim unless the petitioner can show both cause for the default and prejudice

23

resulting from the failure to obtain review on the merits. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). Arguably, as the Iowa Court of Appeals pointed out in their review of the dismissal of Richmond's postconviction relief application, Richmond's claim of ineffective assistance of counsel could be deemed an attempt at establishing cause. However, because this issue lacks merit, this court finds Richmond cannot overcome this procedural hurdle, as no attorney had a duty to raise a meritless issue. This is so, because "[t]here is no constitutional right not to be incriminated by the testimony of another. . . . The privilege against self-incrimination is solely for the benefit of the witness and is purely a personal privilege of the witness, not for the protection of other parties." *United States v. Skolek* 474 F.2d 582, 584 (10th Cir. 1973). The Fifth Amendment protects against "'*compelled* self-incrimination, not (the disclosure of) private information.'" *Fisher v. United States*, 425 U.S. 391, 401 (1976) (quoting *United States v. Nobles*, 422 U.S. 225, 233 n.7 (1975)). Thus a "'party is privileged from producing evidence but not from its production.'" *Fisher*, 425 U.S. at 399 (quoting *Johnson v. United States*, 228 U.S. 457, 458 (1913)). The relevant question, then, is whether the admissions made to Fr. Osing were obtained through compulsion, not whether the information was private. In the instant case, it is clear the information testified to by Fr. Osing was not compelled because Richmond voluntarily made the statements to Fr. Osing. Compulsion of the priest's testimony as to voluntary statements made by Richmond does not, therefore, implicate the Fifth Amendment's protection of Richmond against "compulsory self-incrimination." *See In re Grand Jury Subpoenas*, 144 F.3d 653, 663 (10th Cir. 1998) (finding the compulsion of an attorney's testimony as to voluntary statements not protected by attorney-client privilege did not implicate client's Fifth Amendment rights) (citing *In re Feldberg*, 862 F.2d 622, 629 (7th Cir. 1988)).

Additionally, Richmond also cannot satisfy the actual prejudice or actual innocence

standard. "Actual prejudice" requires a showing that the alleged error "'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Johnson v. United States*, 278 F.3d 839, 844 (8th Cir. 2002) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1981), and explaining, further, that the movant must show that there is a substantial likelihood that, absent the error, a jury would have acquitted him of the charged offense). To establish "actual innocence," as an alternative way to resuscitate a procedurally defaulted claim, a "'petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.'" *Id.* (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)). "'This is a strict standard; generally, a petitioner cannot show actual innocence where the evidence is sufficient to support a [conviction on the charged offense].'" *Id.* (quoting *McNeal v. United States*, 249 F.3d 747, 749-50 (8th Cir. 2001)). The evidence against Richmond was overwhelming. Krell testified, in great detail, about Richmond's actions. Her testimony was corroborated by two other crisis center employees. Thus, the record indicates Richmond would have been convicted even if Fr. Osing had not testified.

Finally, in an attempt to stamp Richmond's claims with an air of finality, it behooves the court to note that *even if* this particular claim was not procedurally defaulted, he would be unable to meet the high standard necessary to warrant relief on a habeas petition. This is so because Richmond cannot show that the Iowa Supreme Court's decision "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." As mentioned elsewhere, it is clear that a direct violation of Richmond's Fifth Amendment right against compelled self-incrimination did not occur. Thus, when viewed objectively and on the merits, the Iowa Supreme Court's resolution of this issue is easily justified under existing Supreme Court precedent. *See James*, 187 F.3d at 869.

Turning to the second issue—whether the admission of the testimony was error under Iowa's statutory priest-penitent-privilege and, if so, whether the "harmless error beyond a reasonable doubt" standard governs the disposition of Richmond's claims—it is clear to this court that this claim is also procedurally barred, albeit for slightly different reasons.

Under Iowa Code section 822.8, no claims can be relitigated in postconviction relief proceedings if they have already been decided on direct appeal. *See Osborn v. State*, 573 N.W.2d 917, 921 (Iowa 1987). Accordingly, the postconviction relief trial court did not address the issue because the issue had already been decided on direct appeal. Thus, it is clear that this specific claim was presented to the highest state court possible—the Iowa Supreme Court—and that Richmond did fairly present this argument to the Iowa state courts. However, regardless of the fact that Richmond succeeded in passing this procedural hurdle, his claim is still procedurally defaulted because it was decided by the Iowa Supreme Court on independent, state-law grounds. The Iowa Supreme Court determined, under Iowa Code section 622.10, the priest-penitent privilege does not extend to individuals who talk to a clergymen for other than religious reasons. The priest-penitent privilege is grounded in common law, not the Constitution. *See Maness v. Meyers*, 419 U.S. 449, 461 n. 8 (1975) ("The constitutional basis for [the Fifth Amendment privilege against self-incrimination] distinguishes it from other privileges established by state statute or common law such as those arising from the relation of priest and penitent, lawyer and client, physician and patient, and husband and wife."). As discussed above, the Constitution is not implicated by allowing a clergyman to testify regarding *voluntary* statements. Next, the Iowa Supreme Court made a factual determination that Richmond did not contact Fr. Osing for any spiritual reason, but rather sought Fr. Osing's advice regarding Richmond's relationship with Krell. This was a factual determination made by

the Iowa courts that is presumed to be correct by this court. *See* 28 U.S.C. § 2254(e)(1). As a result, even assuming that the question of what standard of review should govern the erroneous admission of such testimony is an issue of constitutional import, such a determination is not necessary to the resolution of Richmond's claim due to the decision of the Iowa Supreme Court in *Richmond II*. Consequently, it is without question that this particular issue was resolved on independent, non-federal law grounds, and this court will not disturb the Iowa Supreme Court's interpretation of its own state's statute. *See Clemons v. Luebbers*, 381 F.3d 744, 750 (8th Cir. 2004), *cert. denied*, *Clemons v. Roper*, 126 S. Ct. 41 (2005); *Reagan v. Norris*, 279 F.3d 651 656 (8th Cir. 2002). [6]

---

[6] The court does not read Richmond's filed objection as contesting any other claim outside of the context of the Fifth Amendment claim. However, to the extent Richmond's objections could conceivably be construed as contesting additional claims, the court notes that after conducting its own de novo review, it agrees that Judge Zoss properly determined the remainder of Richmond's claims, specifically, his ex post facto, Establishment Clause and Free Exercise claims, at least outside the context of an ineffective assistance of counsel claim, are procedurally barred. Like Judge Zoss, it does not appear to this court that Richmond has raised any ineffective assistance of counsel claims in his habeas petition. Moreover, even if Richmond's argument could be read as asserting he was denied ineffective assistance of counsel, and thus a fair trial, due to his trial and appellate counsel's failure to challenge the Iowa courts' rulings as being violative of the Free Exercise and Establishment Clauses of the United States Constitution, an issue which arguably was preserved for habeas review, the court notes such an argument is unavailing for the same reasons articulated by the Iowa Court of Appeals on postconviction relief review discussed elsewhere in this opinion. In sum, such an argument lacks merit because, as stated previously, the Iowa Supreme Court's determination obviously rested on the factual determination that Richmond did not elicit Fr. Osing's counsel for spiritual reasons. Thus, Richmond's claim that the Iowa Supreme Court's decision requires an evaluation of the validity of one's religion or interferes with one's religious practices is nothing more than a gross mischaracterization of the reasons behind the court's ultimate determination. Moreover, the court has serious doubts as to whether this is actually the claim being raised due to the fact that Richmond's arguments lack a certain degree of

(continued...)

## III. CERTIFICATE OF APPEALABILITY

Richmond must make a substantial showing of the denial of a constitutional right in order to be granted a certificate of appealability in this case. *See Miller-El v. Cockrell*, 537 U.S. 322 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000); *Mills v. Norris*, 187 F.3d 881, 882 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569. Moreover, the United States Supreme Court reiterated in *Miller-El v. Cockrell* that "'[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The court determines that Richmond's petition does not present questions of substance for appellate review, and therefore, does not make the requisite showing to satisfy § 2253(c). *See* 28 U.S.C. § 2253(c)(2); *Fed. R. App. P.* 22(b). Accordingly, with respect to Richmond's claims, the court shall not grant a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

## IV. CONCLUSION

Richmond's objections to Judge Zoss's Report and Recommendation are **overruled**, and the court **accepts** Judge Zoss's Report and Recommendation. Therefore, Richmond's Petition for Writ of Habeas Corpus is **dismissed**. The court further orders that no

---

[6](...continued)
clarity and cohesiveness.

certificate of appealability shall be issued for any of Richmond's claims.

**IT IS SO ORDERED.**

**DATED** this 4th day of January, 2007.

MARK W. BENNETT
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA